COOLEY LLP
TIANA A. DEMAS (*pro hac vice forthcoming*)
tdemas@cooley.com
110 N. Wacker Drive, Suite 4200
Chicago, Illinois 60606-1511
Telephone:   +1 312-881-6500
Facsimile:    +1 312-881-6598

REBECCA GIVNER-FORBES (*pro hac vice forthcoming*)
rgf@cooley.com
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:   (202) 842-7800
Facsimile:    (202) 842-7899

JUDD D. LAUTER (CA Bar No. 290945)
jlauter@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Plaintiff
GOOGLE LLC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1–3,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>I.  **TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114**<br><br>II. **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A)**<br><br>III. **BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Google LLC ("**Google**") complains and alleges against defendants, Does 1-3 ("**Defendants**"), as follows:

## INTRODUCTION

1. Artificial intelligence ("**AI**") is a transformational technology with the potential to contribute to tackling some of society's most pressing challenges and opportunities.

2. Google's approach to developing and harnessing the potential of AI is grounded in its founding mission—to organize the world's information and make it universally accessible and useful—and it is shaped by the company's commitments to developing technology responsibly and to improving the lives of as many people as possible.

3. Google is at the forefront of recent advances in AI and has long been a trusted leader in the field. Going back to its earliest days, Google has developed and leveraged AI to improve Google search, enable the rapid translation of text across a wide variety of languages, and, more recently, empower scientists to solve protein folding problems that will lead to advances in medical research and treatments. Google's landmark 2017 research paper "Attention is All You Need," introduced a new neural network architecture, which became the bedrock of today's most impressive language understanding and generative AI systems, including Google's flagship conversational AI, Bard.

4. Released in early 2023, Bard is an advanced generative artificial intelligence tool based on Google's Pathways Language Model (or "PaLM") family of large language models. It is capable of generating text, translating languages, writing different kinds of creative content and more, all in response to natural language user prompts or queries.

5. Defendants are three individuals whose identities are unknown who claim to provide, among other things, "the latest version" of Google Bard for download. Defendants are not affiliated with Google in any way, though they pretend to be. They have used Google trademarks, including GOOGLE, GOOGLE AI, and BARD to lure unsuspecting victims into downloading malware onto their computers.

6. Here is how Defendants' scheme works: using social media pages, posts, and ads with Google trademarks and designed to look like they originate from Google, Defendants exploit the public's interest in Google's AI products, and invite them to download free versions of Bard and other

Google AI products via links to Google Drive or Google Sites, among other methods (*see* Figure 1).



Figure 1[1]

7. Downloading the file at the link causes malware to install on the user's device. The malware is designed to access and send the users' social media login credentials to Defendants, who then access the social media accounts using the stolen credentials. As explained below, Defendants target users with business and advertiser accounts on a large social media platform, often small businesses.

8. Google brings this action for trademark infringement and breach of contract to disrupt Defendants' fraudulent scheme, prevent Defendants from causing further harm to Google's users, and raise public awareness about Defendants' misconduct so users can protect themselves.

## PARTIES

9. Plaintiff Google LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

10. Defendants are unknown individuals who appear to be based in Vietnam that have

---

[1] https://www.facebook.com/newsAI.Future.

orchestrated a prevalent malware campaign designed to steal social media login credentials from unsuspecting victims. Defendants deceptively hold themselves out as "Google AI," "AIGoogle," "AiGoogle," "AIGoogle.Plus," "AIGoogle Bard FB," "AIGoogleBard" on Facebook. Defendants control the Facebook pages, advertisements, and email addresses listed in **Exhibit A**.

11. Google does not know the true names and capacities of Defendants and therefore sues them under fictitious names. Google will amend this Complaint to allege the true names and capacities of Defendants if and when they are discovered.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121, as this action arises under the federal Lanham Act, as amended, 15 U.S.C. § 1051 *et seq*. (the "**Lanham Act**"). The Court has supplemental jurisdiction over Google's claim for breach of contract under California law pursuant to 28 U.S.C. § 1367 because the claims herein form part of the same case or controversy under Article III of the United States Constitution.

13. This Court has personal jurisdiction over Defendants in California because: (i) Defendants knowingly targeted individuals and businesses in the State of California, including Google and Meta, both of which have their principal places of business in this State; (ii) a substantial number of acts and omissions that make up Defendants' tortious conduct occurred in this State; and (iii) Defendants consented to the jurisdiction of the federal or state courts of Santa Clara County, California, by agreeing to Google's Terms of Service and the forum selection clause therein.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because: (i) Google is headquartered in this District; (ii) Defendants' conduct is causing injury in this District; and/or (iii) a substantial part of the events or omissions giving rise to Google's claims occurred in this District. In addition, Defendants consented to venue in this District by agreeing to Google's Terms of Service, as discussed in more detail below.

15. This action is properly assigned to the San Jose Division of this District under Civil Local Rule 3-2(c) because Plaintiff Google is headquartered in Santa Clara County, which is served by the San Jose Division.

## GOOGLE AI AND BARD

16. On February 6, 2023, Google announced that it would soon launch Bard, its experimental conversational AI tool. Bard was launched in a limited release on March 21, 2023, before becoming more widely available in May 2023.

17. Bard seeks to combine the breadth of the world's knowledge with the power, intelligence, and creativity of Google's large language models.

18. Powered by Google's next generation language model, PaLM 2, Bard learns by reading trillions of words in order to pick up on the patterns that make up language and absorb information so that it can respond to user prompts or queries by predicting what language combinations would be responsive. Today, Bard can generate creative text content, translate languages, write computer code, and answer user questions in a natural and informative way. It is currently available in over 40 languages, in numerous countries worldwide, with rollouts in additional languages and countries forthcoming.

19. Bard is a web-based platform accessible exclusively at bard.google.com; it is not available via download. To access Bard in the regions where it is currently available, a user need only sign into either a personal Google Account or a Google Workspace account with Bard access enabled. Access to Bard is free.

20. Google is engaged in advanced research and development around new AI technologies, including in the fields of quantum computing and medicine. Google publishes information and updates about AI-related Google projects at the domain **ai.google**.

21. Google uses a variety of channels to create awareness of Bard and other Google AI products and initiatives, including promoting them through Facebook ads that link to ai.google or to other sources of information. On information and belief, Defendants deliberately use this same platform for their own ads, to increase confusion among users who are accustomed to seeing legitimate Google AI ads on Facebook.

22. As further described below, Google owns valuable trademark rights for marks used in connection with its AI offerings. Defendants have deliberately misused these trademarks in their efforts to exploit public interest about Google's AI projects to deceive victims into downloading

Defendants' malicious code.

## THE GOOGLE, GOOGLE AI, G LOGO, AND BARD TRADEMARKS

23. Since its inception in 1998, Google has devoted substantial time, effort, and resources to the development and promotion of its highly regarded goods and services under the GOOGLE trademark. As a result, the GOOGLE mark has acquired significant recognition in the marketplace and has come to embody the substantial and valuable goodwill of Google.

24. To protect the GOOGLE mark for its exclusive use and as notice to the public of its claim of ownership therein, Google owns numerous trademark registrations for the GOOGLE mark and variations thereof, including but not limited to: U.S. Registration Nos. 2,806,075; 2,884,502; 4,058,966; 4,120,012; 4,123,471; 4,168,118; 4,202,570; 4,217,894; 4,525,914; 5,324,609; 5,324,610; and 6,373,292. Copies of these registrations are attached as **Exhibit B**.

25. Among many other uses, Google uses its famous GOOGLE mark as part of its composite mark GOOGLE AI. Google has acquired common law rights in the GOOGLE AI word mark and associated logo through use of the marks in commerce since at least as early as 2017.

26. In conjunction with the GOOGLE AI mark, and since at least as early as May 2018, Google uses a "design mark" – more commonly known as a logo – that consists of columns of multi-colored dots of different sizes in red, yellow, green, and blue (the color sequence Google has come to be associated with given its consistent incorporation into many trademarks in its portfolio), which are arranged in the shape of a hexagon (the "**Google AI Logo**," displayed below).



As a result of Google's widespread and exclusive use of the Google AI Logo for several years, the Google AI Logo has come to embody the substantial and valuable reputation and goodwill that Google has earned in the marketplace for its AI-related products and services.

27. In addition, Google also uses a design mark that consists of the letter "G" drawn in Google's proprietary logotype similarly featuring Google's distinct multi-color sequence of red, yellow, green, and blue (the "**G Logo**," displayed below).



28. The G Logo is used to signify and represent Google in compact or space constrained contexts. Google has used the G Logo in U.S. commerce since at least as early as 2015, and owns federal trademark registrations for the logo, including but not limited to U.S. Registration Nos. 5,365,541; 5,520,292; and 5,520,297.[2] Copies of these registrations are attached as **Exhibit C**.

29. Due to its widespread and extensive use of the G Logo for eight years, the mark enjoys widespread recognition among consumers as a symbol of Google and its services.

30. Google also owns rights in the trademark BARD (together with the GOOGLE and GOOGLE AI marks, Google AI Logo, and G Logo, the "**Google Marks**"). On February 3, 2023, a few days before announcing Bard, Google filed an application to register the BARD mark in the United States. *See* U.S. Serial No. 97/780,614 (Details attached as **Exhibit D**). The BARD mark has been in use in commerce since at least as early as March 21, 2023.[3] Due to extensive media coverage and Google's promotional efforts, Google's BARD mark quickly became well-known among consumers.

31. As a result, consumers associate the BARD mark with Google and conversational AI tools.

**DEFENDANTS' SCHEME & MISUSE OF GOOGLE'S TRADEMARKS**

32. Defendants distribute links to their malware through social media posts, ads (i.e., sponsored posts), and pages, each of which purport to offer downloadable versions of Bard or other

---

[2] Google's priority date in the G Logo, based on its claim of foreign priority under Section 44(d) of the Lanham Act in U.S. Registration No. 5,365,541, is August 24, 2015.

[3] Google's common law rights in the BARD mark may date even earlier than this launch, based on its acquisition of rights through use analogous to trademark use occurring as of February 6, 2023, when it widely announced the launch of BARD.

Google AI products.

33.   In these posts, ads, and pages, Defendants hold themselves out under "GOOGLE"-formative names such as "Google AI," "AIGoogle," "AiGoogleBard," and "AIGoogle.Plus," among others, to make viewers believe that Google is offering the download. These spurious marks appear in the upper left hand corner, in the field where the owner of a page, ad, or post is displayed (*See* Figures 2-3).



Figure 2[4]



Figure 3[5]

---

[4] www.facebook.com/ads/library/?id=709657731179392
[5] *See* https://www.facebook.com/newsAI.Future (post dated September 24,2023).

Additional examples are shown on **Exhibit E**.

34. Defendants' use of the Google Marks pervades their posts, ads, and pages. The GOOGLE, GOOGLE AI, G LOGO, and BARD marks, or confusingly similar variations thereof, feature prominently in Defendants' social media cover photos, profile pictures, and other visual content.



Figure 4[6]



Figure 5[7]

---

[6] *See* www.facebook.com/AIGoogleweb
[7] *See* www.facebook.com/sumaprothomlight

35. To increase the likelihood of confusion, Defendants use Google's proprietary typeface and colors similar to Google's multicolor sequence, as well as images that appear to be from Google speaking events or which depict Google's CEO, Sundar Pichai.

36. In addition, Defendants often register and display within the offending pages, posts, and ads, infringing domain names, such as gbard-ai.info and gg-bard-ai.com, which Defendants configure to redirect to web pages that hosted links to Defendants' malware. Many of Defendants' social media pages also display fake or deceptive email addresses that appear to be associated with Google but are not, such as info@googleai.co. Defendants also hold themselves out as being located in California or Washington, DC, locations where Google has offices. *See* **Exhibit F**.

37. Defendants' ads are designed to lure unsuspecting users into clicking on malicious links by, for example, deceptively representing that the links lead to an "unpublished" version of Bard. The ads also create the false impression that Google typically charges for its AI offerings, and that the user has a limited opportunity to obtain a "free" premium Google AI product through Defendants' download links and access codes. For example, one ad for the fictitious product "GoogleAI.Plus" claims: "GoogleAI.Plus premium version you will be able to use for free forever after installing and answering our survey questions today Download now…."



Figure 6[8]

---

[8] www.facebook.com/ads/library/?id=2040383232976585

38. On information and belief, Defendants' ads that contain malicious links and infringe Google's trademarks are targeted to, and accessed by, persons in the United States, including California residents. Publicly-available information about some of Defendants' ads from Facebook's Ad Library shows they direct their ads to US-based users, the ads are accessible in the US, and US-based users (including a California user) have interacted with the ads.

39. Defendants also characterize their downloads as a "Free Trial" of Google's AI offerings, or tout "Free installation codes." The "Free" installation codes in Defendants' ads and posts are actually passwords that open files containing malware payloads.

40. When a user logged into a social media account clicks the links displayed in Defendants' ads or on their pages, the links redirect to an external website from which a RAR archive, a type of file, downloads to the user's computer. The RAR archive is encrypted with a password provided in the corresponding post or ad, which Defendants characterize as an installation code. Once a user enters the installation code, the RAR archive opens and delivers a Windows Installer package file, ending with the extension ".msi" ("**.msi file**"). This msi file contains a Javascript payload and accompanying installation scripts and metadata for a malicious browser extension, which installs automatically on the user's device.

41. Once installed, the malicious browser extension collects sensitive data from the victim's social media account and sends it to a remote server controlled by Defendants. Based on a forensic investigation performed on Google's behalf, this remote server is located in or around Los Angeles, California, at the IP address 198.252.99.154.

42. The sensitive social media account data collected by Defendants includes login credentials, which, once used, allow Defendants to identify accounts with large followings and/or associated advertiser or business accounts. Specifically, Defendants use the victims' stolen authentication tokens to query social media account data including the fields "fan_count," "business," "verification_status," "can_create_ad_account," "sharing_eligibility_status," "created_time," "is_prepay_account," "adspaymentcycle," and various others. This information is encoded and sent to Defendants, who, on information and belief, use the information to prioritize valuable accounts for takeover.

43. Based on a review of social media accounts that have run or are running Defendants'

pages, posts and ads, Defendants appear to take over the accounts, then they change the account name to an alias related to Google or Google products, create additional malicious advertisements that include links to Defendants' malware, and post those ads using the victim's advertising account.

44. On information and belief, Defendants' intended victims include small businesses with business or advertiser accounts that Defendants redirect for their own purposes. In addition to including code that allows Defendants to identify which of their victims are likely to have such resources, some of Defendants' ads expressly target small businesses by claiming that Defendants' fake AI downloads can aid in marketing.

- "Testing shows that our new AI tool has helped 10,000 businesses use advertising to increase efficiency by more than 5 times. GoogleAI.Plus [is] the latest, best version…Congratulations on your first trial of this best and premium version."[9]
- Inviting users to download the software to use for "better [] ad optimization" and to "create better advertising content."[10]

45. Some of Defendants' ads display a "Learn More" button at the bottom, with text suggesting that the button links to the domain "google.ai." or "ai.google."[11] Selecting "Learn More" does not lead to google.ai, but to links for Defendants' malware. Because Google's own AI-related social media ads often include a link to google.ai, users exposed to such ads are even more likely to mistakenly believe that Defendants' ads originate from Google.

## DEFENDANTS' VIOLATIONS OF GOOGLE'S TERMS OF SERVICE

46. In addition to misrepresenting their malicious links as Google AI or Bard downloads, Defendants misuse other Google services to execute their scheme, including Google Sites and Google Drive, which Defendants use to host links to the RAR archive files containing their malware.

47. Google Sites and Google Drive are Google services through which a user may upload, store, and distribute their own content; Google does not use Google Sites or Google Drive to distribute its own content and services to users. Nevertheless, Defendants' links, which contain "Google" in the

---

[9] https://www.facebook.com/ads/library/?id=665504448883516
[10] https://www.facebook.com/ads/library/?id=325977226691811
[11] https://www.facebook.com/ads/library/?id=709657731179392

text, make it even more likely that some users will believe that the content originates from Google. On information and belief, Defendants utilize these platforms for this reason.

48. In order to upload content to Google Sites or Google Drive, users must either create or use an existing Google account ("Google Account"). By creating a Google Account, each user expressly agrees to Google's Terms of Service ("**TOS**").

49. Google's TOS varies by the country where the user's IP address is located at account creation. For example, a user creating a Google Account from a United States IP address must agree to Google's United States TOS (https://policies.google.com/terms?hl=en-US). A user accessing Google from an IP address in Vietnam must agree to Google's Vietnam TOS (located in English here: https://policies.google.com/terms?hl=en&gl=vn). Much of the TOS content is the same across country versions, however.

50. At all relevant times, both the U.S. and Vietnam versions of the TOS have provided that:
> California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services…. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.[12]

51. While many Google Drive links involved in the scheme were created by users who agreed to the Vietnam TOS, some belonged to users who accepted Google's TOS in the U.S. and India. The choice of law and choice of forum provision in Google's India TOS is substantially the same as that set forth above.[13]

52. All versions of the TOS prohibit users from "abus[ing], harm[ing], interfer[ing] with, or disrupt the services — for example, by accessing or using them in fraudulent or deceptive ways, introducing malware, or spamming, hacking, or bypassing our systems or protective measures."

53. All versions of the TOS also incorporate by reference certain "service-specific additional terms and policies." As is relevant here, the TOS incorporate by reference Google's "Abuse

---

[12] Vietnam TOS: https://policies.google.com/terms?hl=en&gl=vn#toc-problems; US TOS: https://policies.google.com/terms#toc-problems
[13] India TOS: https://policies.google.com/terms?gl=IN&hl=en-GB&pli=1#toc-problems

Program Policies & Enforcement" ("**Abuse Policies**") for all users of Google Drive or Google Sites.[14]

54. At all relevant times, the Abuse Policies have included the following provisions:

> Do not transmit malware or any content that harms or interferes with the operation of the networks, servers, end user devices, or other infrastructure. This includes the direct hosting, embedding, or transmission of malware, viruses, destructive code, or other harmful or unwanted software or similar content. This also includes content that transmits viruses, causes pop-ups, attempts to install software without the user's consent, or otherwise impacts users with malicious code…

> …Do not use this product for phishing. This includes soliciting or collecting sensitive data such as passwords, financial details, and social security numbers.[15]

55. Google's policies also prohibit impersonation of others.

56. The Abuse Policies are the same in every country, with translations to other languages provided for convenience.

57. By using Google Sites and Google Drive to impersonate Google, and to host and push downloads of their malware to users, Defendants agreed to, and then violated, Google's TOS and Abuse Policies (which are incorporated by reference into the TOS).

58. Google has expended substantial time and resources to identify and prevent Defendants' abuses of Google's services.

59. By utilizing Google Sites and Google Drive for malicious purposes, namely as infrastructure to support Defendants' unlawful malware scheme, Defendants' conduct threatens to harm Google's reputation and the reputation of those Google services.

## FIRST CLAIM FOR RELIEF

### INFRINGEMENT OF A REGISTERED TRADEMARK, 15 U.S.C. § 1114

60. Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

61. The registered Google Marks are all valid trademarks entitled to protection under the Lanham Act and are registered on the principal register at the United States Patent & Trademark

---

[14] *See, e.g.*, Vietnam: https://policies.google.com/terms/service-specific?hl=en&gl=vn (scroll to "Drive" and click arrow to expand and view applicable policies; scroll to "Sites" and click arrow to view applicable policies).
[15] https://support.google.com/docs/answer/148505?hl=en#zippy=%2Cmalware-and-similar-malicious-content%2Cphishing

Office. The trademark registrations reflected in Exhibits B and C hereto are in full force and effect.

62. Defendants have used the registered Google Marks in interstate commerce. Defendants' use of the registered Google Marks is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' unauthorized use of the registered Google Marks on the content, including advertising and downloads, controlled by Defendants.

63. The above-described acts of Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114(1) and entitle Google to relief.

64. Defendants have unlawfully profited from the infringement of the registered Google Marks detailed herein.

65. Because of Defendants' acts of trademark infringement, Google has suffered damage to the goodwill associated with the registered Google Marks.

66. Defendants have irreparably harmed Google and, if not enjoined, will continue to irreparably harm Google and its federally registered trademarks.

67. Defendants have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

68. Google's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Google is entitled to the entry of permanent injunctive relief pursuant to 15 U.S.C. § 1116.

69. Google is entitled to damages, and Google is further entitled to have those damages trebled under 15 U.S.C. § 1117.

70. This is an exceptional case making Google eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

### SECOND CLAIM FOR RELIEF

**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(a)(1)(A)**

71. Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

72. The Google Marks are distinctive marks that are associated with Google and

exclusively identify its business, products, and services.

73. Defendants' use of the Google Marks, and variations thereof, in interstate commerce is likely to cause confusion, or to cause mistake, or to deceive the relevant public concerning the source or origin of Defendants' malware. Indeed, that is Defendants' intent. Defendants pass themselves off as Google and pretend to promote genuine Google products, in order to trick victims into downloading malware.

74. Defendants' acts constitute trademark infringement of the Google Marks, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling Google to relief.

75. Defendants have unlawfully profited from the trademark infringement described herein.

76. Because of the above-described acts of Defendants, Google has suffered damage to the goodwill associated with the Google Marks.

77. Defendants have irreparably harmed Google, and if they are not enjoined, they will continue to irreparably harm Google and the Google Marks.

78. Defendants have irreparably harmed the general public who are exposed to Defendants' ads and other content promoting downloads of Defendants' malware, and if the Defendants are not enjoined, they will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

79. Google's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Google is entitled to the entry of permanent injunctive relief pursuant to 15 U.S.C. § 1117.

80. This is an exceptional case making Google eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT UNDER CALIFORNIA LAW

81. Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

82. Defendants entered into a valid, binding, and enforceable written contract with Google

by expressly agreeing to Google's TOS, as set forth above.

83. Defendants breached the TOS by, among other things: (a) distributing malware; and (b) impersonating Google.

84. Google has at all times complied with and performed all of its obligations under the TOS. There are no unsatisfied conditions for Defendants' performance under the TOS.

85. As set forth above, as a result of Defendants' breach of the TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate and address Defendants' breach.

## **PRAYER FOR RELIEF**

WHEREFORE, Google respectfully requests the following relief:

1) That the Court enter a judgment against Defendants that Defendants have:
   a) Infringed the rights of Google in the Registered Google Marks in violation of 15 U.S.C. § 1114(1);
   b) Infringed the rights of Google in the Google Marks in violation of 15 U.S.C. § 1125(a); and
   c) Breached their contracts with Google in violation of California law.
2) That each of the above acts was willful.
3) That the Court issue a permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:
   a) Engaging in any infringing activity including advertising, selling, and offering for sale any goods or services in connection with the Google Marks or any confusingly similar mark, whether occurring online or in connection with physical advertising, products, and services;
   b) Creating or maintaining any social media accounts, including any Facebook accounts, that incorporate the Google Marks in their profile names, handles, and profile images, or otherwise display the Google Marks in a manner likely to cause confusion about the source of the account or any of its posts or

        advertisements;

    c) Registering, using, or trafficking in any domain name that is identical or confusingly similar to any of the Google Marks;

    d) Operating or maintaining any websites that display content that infringes the Google Marks; and

    e) Creating or maintaining any Google accounts or otherwise accessing Google services in violation of Google's TOS.

4) That Google be awarded damages for Defendants' trademark infringement and that these damages be trebled due to Defendants' willfulness, in accordance with 15 U.S.C. § 1117.

5) That Google be awarded all profits resulting from Defendants' infringement of Google's rights and by means of Defendants' illegal acts.

6) That Defendants be ordered to account for and disgorge to Google all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of herein.

7) That Google be awarded pre-judgment and post-judgment interest; and

8) That Google be granted such further relief as the Court may deem just and equitable.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully demands a jury trial of all issues so triable.

| | | |
|---|---|---|
| Dated: | November 13, 2023 | Respectfully submitted, |

By: */s/ Judd D. Lauter*
    Judd D. Lauter (290945)

COOLEY LLP
JUDD D. LAUTER (290945)
jlauter@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

TIANA DEMAS (*pro hac vice forthcoming*)
tdemas@cooley.com
110 N. Wacker Drive, Suite 4200
Chicago, Illinois  60606-1511
Telephone:   +1 312-881-6500
Facsimile:    +1 312-881-6598

REBECCA GIVNER-FORBES (*pro hac vice forthcoming*)
rgf@cooley.com
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:   (202) 842-7800
Facsimile:    (202) 842-7899

Attorneys for Plaintiff
GOOGLE LLC