UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOES 1-3,<br><br>    Defendants. | Case No. 23-cv-05823-VKD<br><br>**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE;**<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 24 |

Plaintiff Google LLC ("Google") moves for entry of default judgment against three unnamed defendants, John Does 1-3. Dkt. No. 24. Defendants have not appeared in this action and the Clerk has entered default against them. *See* Dkt. No. 23. The Court previously found this motion suitable for determination without oral argument. *See* Civil L.R. 7-1(b); Dkt No. 25.

Because defendants have not appeared and are in default, this Court does not have the consent of all parties. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *Williams v. King*, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court directs the Clerk of the Court to reassign this action to a district judge, with the following report and recommendation that Google's motion for default judgment be granted in part and denied in part.

**REPORT AND RECOMMENDATION**

**I.   BACKGROUND**

According to the complaint, Google is a limited liability company with its principal place of business in Mountain View, California. Dkt. No. 1 ¶ 9. Among other services, Google offers Google Sites and Google Drive, which allow users to upload, store, and distribute content. *Id.* ¶ 47. In early 2023, Google released Bard, "an advanced generative artificial intelligence tool . . .

capable of generating text, translating languages, writing different kinds of creative content, and more." *Id.* ¶ 4.

Google holds registered trademarks for several variations of the word "GOOGLE," *id.* ¶ 24; Dkt. No. 1-2 ("Google" registrations), and of the "G Logo" design, which "consists of the letter 'G' drawn in Google's proprietary logotype similarly featuring Google's distinct multi-color sequence of red, yellow, green, and blue," *see* Dkt. No. 1 ¶¶ 27-28; Dkt. No. 1-3 ("G Logo" registrations).[1] In addition, Google also uses three unregistered trademarks: (1) the composite word mark "GOOGLE AI"; (2) the "Google AI Logo" design mark, which "consists of columns of multi-colored dots of different sizes in red, yellow, green, and blue . . . which are arranged in the shape of a hexagon"; and (3) the word mark BARD.[2] *See* Dkt. No. 1 ¶¶ 26, 30. Google alleges that it started using GOOGLE AI and the Google AI logo in commerce as early as May 2018, and that it started using BARD in commerce as early as March 21, 2023. *Id.*

Defendants are three individuals believed to be located in Vietnam and possibly India, but whose identities Google has been able to discover. *Id.* ¶ 4; Dkt. No. 24 at 3. As noted in the Court's order authorizing service by email and text message, "Google has been able to identify five Gmail addresses and three phone numbers associated with Google accounts used by defendants." Dkt. No. 16 at 1; Dkt. No. 1-1 (listing emails and phone numbers).

Google alleges that defendants have engaged and continue to engage in a fraudulent scheme, whereby they pretend to be affiliated with Google in order to trick members of the public into downloading malware. *See* Dkt. No. 1 ¶¶ 32-45. According to Google, defendants have posted advertisements and other content on social media platforms like Facebook using Google

---

[1] The "GOOGLE" trademark registrations include U.S. Registration Nos. 2,806,075; 2,884,502; 4,058,966; 4,120,012; 4,123,471; 4,168,118; 4,202,570; 4,217,894; 4,525,914; 5,324,609; 5,324,610; and 6,373,292." Dkt. No. 1 ¶ 24. The "G Logo" trademark registrations include U.S. Registration Nos. 5,365,541; 5,520,292; and 5,520,297. *Id.* ¶ 28.

[2] Google filed an application to register the word BARD with the United States Patent and Trademark Office (USPTO) on February 3, 2023 (U.S. Registration. No. 97780614). *Id.* ¶ 30. The registration is still pending and on April 23, 2024, a Notice of Allowance was issued by the USPTO. According to Google, it "recently changed the name of its . . . AI chatbox from Bard to Gemini; however, the consuming pubic still associates the BARD mark with Google and Google maintains rights in the same." Dkt. No. 24 ¶ 19-22 n.2.

trademarks and other design elements that deliberately create the impression that the advertisements and other content originate from Google.  *Id.* ¶ 6; Dkt. No. 1-1 (list of Facebook pages and advertisements allegedly controlled by defendants); Dkt. No. 1 ¶¶ 33, 34, 37 (examples of ads and pages using Google's trademarks).  Defendants promote these advertisements and other content through Facebook ads in a manner similar to the way Google promotes Bard and other Google AI products.  Defendants purport to offer free versions of Bard via fake links to Google Drive or Google Sites.  *Id.* ¶ 6.  However, when a user downloads a file from one of the links in defendants' ads, the user instead receives malware that collects the user's sensitive information, such as the login credentials for the user's social media accounts.  *Id.* ¶ 7.

To use Google services like Google Sites or Google Drive, a user must create a Google account and agree to Google's Terms of Service ("TOS").  *Id.* ¶ 48.  Google's TOS vary by country; however, all versions of the TOS prohibit users from "abus[ing], harm[ing], interfer[ing] with, or disrupt[ing] the services—for example, by accessing or using them in fraudulent or deceptive ways, introducing malware, or spamming, hacking, or bypassing our systems or protective measures."  *Id.* ¶ 52.  Additionally, all versions incorporate by reference Google's "Abuse Program Policies and Enforcement," which includes the following prohibitions:

> Do not transmit malware or any content that harms or interferes with the operation of the networks, servers, end user devices, or other infrastructure.  This includes the direct hosting, embedding, or transmission of malware, viruses, destructive code, or other harmful or unwanted software or similar content.  This also includes content that transmits viruses, causes pop-ups, attempts to install software without the user's consent, or otherwise impacts users with malicious code. . . .
>
> Do not use this product for phishing.  This includes soliciting or collecting sensitive data such as passwords, financial details, and social security numbers.

*Id.* ¶ 54.  Both the U.S. and Vietnam TOS contain a choice of law and forum selection clause stating:

> California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services . . . .  These disputes will be resolved exclusively in the federal or

state courts of Santa Clara County, California, USA, and you and
Google consent to personal jurisdiction in those courts.[3]

*Id.* ¶ 50.  Defendants have Google accounts and use Google services, such as email.  *Id.* ¶ 46; Dkt. No. 1-1 (listing emails).

Google filed this lawsuit on November 13, 2023, asserting claims against defendants for (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and (3) breach of contract under California state law.  *See* Dkt. No. 1.  Google says it served defendants as directed by the Court on December 31, 2023, and January 2, 2024.  Dkt. No. 18 (proof of service).  Defendants have not appeared in this action, and the Clerk entered default against them on February 23, 2024.  *See* Dkt. No. 23.

## II. LEGAL STANDARD

The Clerk must enter default against a party who fails to plead or otherwise defend an action.  Fed. R. Civ. P. 55(a).  After an entry of default, a court has discretion to enter default judgment.  Fed. R. Civ. P. 55(b)(2)[4]; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court may consider the following factors, known as the *Eitel* factors, to determine whether to enter default judgment:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  The court may also conduct a hearing or make a referral to conduct an accounting,

---

[3] The India TOS are substantially the same.  *Id.* ¶ 51.

[4] "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared."  Fed. R. Civ. P. 55(b)(2).  There are no such issues presented here.  Nor is there any indication that defendants are persons in U.S. military service.  *See* 50 U.S.C. § 3931.

4

determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

**III.   DISCUSSION**

    **A.   Subject Matter and Personal Jurisdiction**

When a default judgment is sought, the court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (cleaned up).  "The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986); *see Prosperity Recovery, Inc. v. IDC Techs., Inc.*, No. 20-cv-03679-LHK, 2021 WL 6052780, at *5-*7 (N.D. Cal. Dec. 21, 2021) (denying motion for default judgment for failure to establish personal jurisdiction).

Google does not address the question of jurisdiction in its motion.  Nevertheless, the Court considers whether the allegations of the complaint are sufficient to establish subject matter and personal jurisdiction.

The Court has original subject matter jurisdiction over Google's Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338, and supplemental jurisdiction over its state law claim pursuant to 28 U.S.C. § 1367.

The Court also has personal jurisdiction over defendants, even though they apparently are located outside the United States.  "Because the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).  "For instance, 'parties to a contract may agree in advance to submit to the jurisdiction of a given court.'" *Dow Chem.*, 422 F.3d at 831 (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)).  Here, Google alleges that defendants created Google accounts and accepted Google TOS that include a forum selection clause stating: "all disputes arising out of or relating to the terms . . . will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and [the user] and Google consent to personal jurisdiction in those courts." *Id.*

5

¶ 50. Courts have considered these same or similar terms of service and concluded that acceptance of such terms manifests consent to personal jurisdiction in this district. *See, e.g.*, *Meta Platforms, Inc. v. Arowokoko*, No. 22-cv-00803-DMR, 2023 WL 3035454, at *4 (N.D. Cal. Feb. 24, 2023); *Facebook, Inc. v. Sluchevsky*, No. 19-cv-01277-JSC, 2020 WL 5823277, at *2 (N.D. Cal. Aug. 28, 2020); *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 59-64 (D.D.C. 2014); *Rojas-Lozano v. Google, Inc.*, No. 15-cv-10160-MGM, 2015 WL 4779245, at *4 (D. Mass. Aug. 12, 2015). Google has adequately alleged a basis for personal jurisdiction in this Court.

### B. Service of Process

A default judgment entered against a defendant who was improperly served is void. *See SEC v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007). The Court previously issued an order authorizing Google to serve defendants by email and text message pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. Dkt. No. 16. That rule "permits service in a place not within any judicial district of the United States by means not prohibited by international agreement as may be directed by the court." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (quoting Fed. R. Civ. P. 4(f)(3)) (cleaned up).

Here, Google filed its proof of service attesting that it served defendants by email and text message on December 31, 2023, and January 2, 2024. Dkt. No. 18 (proof of service). In its motion for default judgment, Google reports that all of defendants' Google accounts remain active and two of the accounts "have been accessed on multiple occasions since" Google served defendants. Dkt. No. 24 at 4; Dkt. Nos. 24-2 through 24-6 (Google subscriber information for defendants' email addresses). The Court finds that defendants have been properly served. *See* Dkt. No. 16.

### C. *Eitel* Factors

For the reasons discussed below, the Court finds that the *Eitel* factors weigh in favor of entering default judgment on all of Google's claims.

#### 1. The possibility of prejudice to Google

The first *Eitel* factor concerns whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff weighs in favor of

6

granting default judgment. *Eitel*, 782 F.2d at 1471; *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). Given defendants' failure to respond to the complaint and to otherwise participate in the litigation, Google likely would be left without recourse against them on its trademark, false designation of origin, and breach of contract claims if the Court does not enter default judgment. *See Facebook, Inc. v. Kokhtenko*, No. 21-cv-03036-YGR (LB), 2021 WL 7448619, at *4 (N.D. Cal. Dec. 3, 2021).

### 2. The merits of Google's claims and the sufficiency of the complaint

The second and third *Eitel* factors concern the merits of the plaintiff's claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. The Ninth Circuit suggests that these factors require that a plaintiff state a claim for relief on which she may recover. *Levi Strauss & Co. v. Toyo Enter. Co., Ltd.*, 665 F. Supp. 2d 1084, 1095 (N.D. Cal. 2009) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

#### a. Claims 1 and 2

Google asserts claims against defendants for infringement of Google's registered trademarks under 15 U.S.C. § 1114, and for infringement of its unregistered trademarks and false designation of origin under 15 U.S.C. § 1125(a).

Section 32 of the Lanham Act provides that "[a]ny person" who, "without the consent of the registrant," "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant[.]" 15 U.S.C. § 1114(1)(a). To establish a claim of infringement of a registered trademark, a plaintiff must show that (1) it has a valid, protectable trademark, and (2) the defendant's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).

Section 43(a) of the Lanham Act "create[es] a federal cause of action for traditional trademark infringement of unregistered marks." *Dastar Corp. v. Twentieth Century Fox Film*

*Corp.*, 539 U.S. 23, 30 (2003); *see* 15 U.S.C. § 1125(a).  To establish a claim under section 43(a), a plaintiff must show that the defendant (1) used in commerce (2) a word or mark, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or origin of the goods or services in question. *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902-04 (9th Cir. 2007)); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980)).

With respect to the GOOGLE and G Logo marks, Google has shown that it is the owner of federal registrations for these marks, *see* Dkt. No. 1 ¶¶ 24, 28; this is "prima facie evidence of the validity of the registered mark[s] and of [the registrant's] exclusive right" to use the marks. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).  With respect to the unregistered GOOGLE AI, Google AI Logo, and BARD marks, Google has plausibly alleged use of these marks in commerce. *See* Dkt. No. 1 ¶¶ 26, 30.  Thus, as to both the registered and unregistered marks, Google has shown that each of the marks is entitled to protection.

To show likelihood of confusion for both registered and unregistered trademarks, a plaintiff must demonstrate that the relevant audience is likely to be confused as to the origin of the goods or services bearing the marks in question. *See Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), the Ninth Circuit set forth eight factors that are relevant to the likelihood of confusion analysis: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the mark; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark, and; (8) likelihood of expansion of the product lines or services.  *Id.*, *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).  These factors are not applied mechanically; courts may examine some or all of the factors, depending on their relevance and importance. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006).

Google claims that defendants use its registered and unregistered trademarks to impersonate Google and distribute malware, and that such use creates a likelihood of consumer

8

confusion; indeed, Google contends that confusion and deception is the principal objective of defendants' use of the marks. See Dkt. No. 1 ¶¶ 60-63, 71-74; Dkt. No. 24 at 6-7. Considering the relevant *Sleekcraft* factors (strength of the marks, similarity of the marks, similarity of the marketing channels, and defendants' intent in selecting the marks), the Court finds that Google has shown a likelihood of confusion.

As alleged in the complaint, Google's marks are strong. Defendants purport to offer "free" downloads of Google's Bard or other Google services, although defendants are not affiliated in any respect with Google. They use marks that are indistinguishable from Google's authentic marks and promote their "free" downloads in the same marketing channels on which Google relies. Moreover, Google contends that defendants knowingly use Google's marks with the specific intent to pass themselves off as Google to deceive consumers into believing they may obtain Google products or services by clicking on the links in defendants' ads. Defendants include other Google-related design elements in order to enhance the appearance that they are associated with Google, such as images depicting Google-related events or Google's CEO, Sundar Pichai, and defendants display Google-related domain names, such as "gbard-ai.info." In sum, Google's allegations support a conclusion that defendants' use of Google trademarks was and is intended to impersonate Google, and that such use likely causes confusion among consumers. *See Sleekcraft*, 599 F.2d at 354; *Amazon.com, Inc. v. Expert Tech Rogers Pvt. Ltd.*, No. 20-cv-07405-PJH (JSC), 2021 WL 4461601, at *5 (N.D. Cal. Sept. 22, 2021) (finding a likelihood of confusion because the defendants used several Amazon marks to mimic Amazon's actual download and setup process); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, No. 19-cv-01167-JST (AGT), 2021 WL 5707741, at *5 (N.D. Cal. Oct. 21, 2021) (finding a likelihood of confusion because the defendants used exact copies of the Facebook marks and falsely represented that they were a Facebook partner); *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) ("When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public.").

Google's complaint does not contain allegations bearing on some of the other factors, like

evidence of actual confusion or degree of purchaser care.[5]  However, the factors addressed above—strength of the marks, similarity of the marks, similarity of the marketing channels, and defendants' apparent intent to impersonate Google—appear "most pertinent to the particular case before the court." *Rearden*, 683 F.3d at 1209.  The allegations in Google's complaint are sufficient to support a finding that defendants' use of Google's registered and unregistered trademarks is likely to cause consumer confusion.

Accordingly, the second and third *Eitel* factors weigh in favor of granting default judgment as to Google's trademark infringement and false designation of origin claims.

### b. Claim 3

Google alleges defendants "breached the TOS by, among other things: (a) distributing malware; and (b) impersonating Google."  Dkt. No. 1 ¶ 83.  To state a claim for breach of contract under California law, a plaintiff must plead (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Google has stated a claim for breach of its TOS.

First, Google alleges that valid contracts exist between Google and defendants.  According to the complaint, defendants agreed to Google's TOS by creating and using Google accounts.  *Id.* ¶ 48.  Google's allegations are sufficient to establish the existence of a valid contract under California law.  *See Arowokoko*, 2023 WL 3035454, at *7; *Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 970 (N.D. Cal. 2015) (finding a contract where the user agreed to Facebook's Terms by creating a Facebook account and accessing Facebook's services).

Second, Google alleges that it performed its obligations under its TOS by providing its Google Drive and Gmail services to defendants.  Dkt. No. 1 ¶ 84.

Third, Google alleges defendants breached the Google TOS by distributing links to defendants' malware through various social media posts, ads, and pages and impersonating

---

[5] Google's complaint suggests that some consumers have actually confused defendants' pages and advertisements for its own, Dkt. No. 1 ¶ 8; however, Google does not allege any specific instances of consumer confusion.

Google. *Id.* ¶ 57. Google alleges that the Google TOS prohibit users from "abus[ing], harm[ing], interfer[ing] with, or disrupt[ing] the services—for example, by accessing or using them in fraudulent or deceptive ways, introducing malware, or spamming, hacking, or bypassing our systems or protective measures." *Id.* ¶ 52. Additionally, Google's Abuse Program Policies & Enforcement, which is incorporated within the Google TOS, prohibits phishing and imitation of others. *Id.* ¶¶ 54-55. Google alleges that defendants violated these provisions by pretending to be Google and using Google Sites and Google Drive to advertise and host downloads of their malware to users.

Fourth, Google claims that defendants' breaches have harmed Google by threatening its reputation and forcing it to expend "substantial time and resources to identify and prevent [d]efendants' abuses of Google's services." *Id.* ¶¶ 58-59.

The Court concludes that these allegations are sufficient to state a claim for breach of contract, and accordingly, the second and third *Eitel* factors weigh in favor of granting default judgment in Google's favor as to its breach of contract claim.

### 3. Amount of money at stake

The fourth *Eitel* factor considers the amount of money at stake in the litigation. *Eitel*, 782 F.2d at 1471. Here, Google seeks only declaratory and injunctive relief against defendants. Dkt. No. 22 at 13. In similar circumstances, courts generally find that this factor weighs in favor of default judgment. *See, e.g.*, *Telebrands Corp. v. VindEx Sols. LLC*, No. 21-cv-00898-BLF, 2022 WL 1062051, at *9 (N.D. Cal. Apr. 8, 2022); *Levi Strauss & Co. v. Neverland Online Pty Ltd*, No. 19-cv-04178-SBA (JCS), 2020 WL 6931065, at *9 (N.D. Cal. June 8, 2020); *Ingrid & Isabel, LLC v. Bentibo*, No. 18-cv-01856-JCS, 2019 WL 2517524, at *7 (N.D. Cal. May 10, 2019). As Google seeks no money, this factor weighs in favor of granting default judgment.

### 4. Possibility of a dispute concerning material facts

The fifth *Eitel* factor addresses the possibility of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471-72. Where a plaintiff has filed a well-pleaded complaint alleging the elements necessary to establish its claims, and the Clerk has entered default upon the defendant's failure to answer, a court may find the possibility of a dispute as to material facts is unlikely. *Fudy Printing*

11

*Co. v. Aliphcom, Inc.*, No. 17-cv-03863-JSC, 2019 WL 2180221, at *5 (N.D. Cal. Mar. 7, 2019). Here, Google has filed a well-pleaded complaint for each of its claims, and the Court is aware of no indication that the allegations are disputed. This factor weighs in favor of granting default judgment.

### 5. Possibility of excusable neglect

The sixth *Eitel* factor concerns whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1471. Where a defendant "blatant[ly] attempts to resist service" or fails to appear after being properly served, no excusable neglect will be found. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). However, a defendant who "reasonably believe[s]" she is not required to answer a suit may be excused. *Eitel*, 782 F.3d at 1472.

Here, the defendants have not answered or otherwise responded to the complaint after being properly served. While defendants might have a reasonable excuse for their failure to appear, the Court cannot discern one from the present record. Accordingly, this factor weighs in favor of granting default judgment.

### 6. Policy favoring decisions on the merits

The seventh *Eitel* factor requires consideration of the "strong policy favoring decisions on the merits" embodied in the federal rules. *Eitel*, 782 F.2d at 1472. While the Court prefers to decide matters on the merits, defendants' failure to participate in this litigation makes that impossible. *See Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668 at *13 (N.D. Cal. May 18, 2018) ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment therefore is Google's only recourse. *See U.S. v. Roof Guard Roofing Co, Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal., Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

Accordingly, because Google has stated a claim for relief, this factor weighs in favor of granting default judgment.

### IV. REMEDIES

Google asks the Court to enter a permanent injunction barring "[d]efendants and

[d]efendants' agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with [d]efendants," from infringing on its trademarks or any confusingly similar mark and "creating or maintaining any Google accounts or otherwise accessing Google services in violation of Google's [TOS]." Dkt. No. 24-7 at 2 (proposed order). Google does not address the question of remedies in its motion. However, the Court considers Google's request for relief as reflected in its proposed order. *See* Dkt. No. 24-7.

### A. Injunctive Relief

The Court first discusses Google's entitlement to injunctive relief before turning to the specific relief it requests.

#### 1. Google's entitlement to injunctive relief

*Claims 1 and 2.* The remedies available for violation of the Lanham Act include injunctive relief, and, generally, "[i]njunctive relief is the remedy of choice for trademark . . . cases, since there is no adequate remedy at law for the defendant's continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); 15 U.S.C. § 1116(a). To obtain injunctive relief, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). With respect to irreparable injury, the Lanham Act provides that:

> A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction . . . .

15 U.S.C. § 1116(a); *see also Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1005 (9th Cir. 2023).

Because Google has stated a claim for violation of the Lanham Act and because the *Eitel* factors weigh in favor granting default judgment, as discussed above, Google is entitled to a rebuttable presumption of irreparable harm. *Y.Y.G.M. SA*, 75 F.4th at 1007 (quoting *Herb Reed*

*Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)) ("'[L]oss of control over business reputation and damage to goodwill could constitute irreparable harm.'"). Moreover, given the nature of the violation, Google appears to have no adequate remedy at law for defendants' continuing use of identical or confusingly similar marks. *See Century 21 Real Est.*, 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). The record does not reflect that defendants would bear any hardship if required to comply with an injunction. *9 Xiu Network (Shenzhen) Tech.*, 2021 WL 5707741, at *7 (quoting *Diller v. Barry Driller, Inc.*, 2012 WL 4044732, at *10 (C.D. Cal. Sept. 10, 2012)); *see also Expert Tech Rogers Pvt.*, 2021 WL 4461601, at *10 ("[T]he only apparent hardship to Defendants is ceasing the unlawful conduct, which is not a hardship for purposes of permanent injunction analysis."). Here, an injunction would serve "the general public's interest in protecting trademark holders' rights." *Expert Tech Rogers Pvt.*, 2021 WL 4461601, at *10. An injunction would also serve the public's interest in protection from fraudulent and deceptive uses of Google's marks.

Accordingly, Google is entitled to injunctive relief under the Lanham Act to protect its Google marks.

*Claim 3*. While injunctive relief may be available as a remedy for breach of contract in appropriate circumstances, *see* Cal. C.C.P. § 526(a) (addressing availability of injunction under California law), it is unclear whether such relief is warranted here. Google asks for an injunction requiring defendants to refrain from "[c]reating or maintaining any Google accounts or otherwise accessing Google services in violation of Google's Terms of Service"—effectively an injunction against breaching any part of Google's TOS—but it cites no authority for an injunction of that scope or any injunction whatsoever.

Thus, the Court concludes that Google fails to demonstrate that it is entitled to injunctive relief as a remedy for its breach of contract claim.

**2. Scope of injunctive relief**

Injunctive relief "is a precise tool to fix a precise injury," and "should be 'narrowly tailored' to remedy the specific harm a plaintiff has identified 'rather than to enjoin all possible

14

breaches of the law.'" *OnlineNIC*, 2022 WL 2289067, at *17 (quoting *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004)). Rule 65(d) requires courts to state the terms of the injunction specifically and to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." *Id*. (citing Fed. R. Civ. P. 65(d)(1)(B)-(C)). For an injunction against trademark infringement to be enforceable, it must "identify the [marks] with sufficient specificity" to give defendants "fair notice" of its requirements. *Reno Air Racing Ass'n*, 452 F.3d at 1133. Moreover, Rule 54(c) requires that default judgments "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Google requests a permanent injunction requiring defendants to:

a. refrain from "[e]ngaging in any infringing activity in connection with the Google Marks, including advertising, selling, and offering for sale any goods or services under the Google Marks or any confusingly similar mark, whether occurring online or in connection with physical advertising, products, and services";

b. refrain from "[c]reating or maintaining any social media accounts, including any Facebook accounts, that incorporate the Google Marks in their profile names, handles, and profile images, or otherwise display the Google Marks in a manner likely to cause confusion about the source of the account or any of its posts or advertisements";

c. refrain from "[r]egistering, using, or trafficking in any domain name that is identical or confusingly similar to any of the Google Marks";

d. refrain from "[o]perating or maintaining any websites that display content that infringes the Google Marks"; and

e. refrain from "[c]reating or maintaining any Google accounts or otherwise accessing Google services in violation of Google's Terms of Service."

Dkt. No. 24-7 at 2. The proposed injunction defined "Google Marks" as the "GOOGLE word mark, G Logo, Google AI Logo, and BARD word mark (. . . as defined in the Complaint)." *Id.*

Sections (a)-(d) of Google's proposed injunction appear to address defendants' violation of the Lanham Act, as alleged in claims 1 and 2. These provisions comply with the requirements of Rule 65(d) in most respects. First, the proposed injunction specifically identifies the word marks defendants must not use, including any "confusingly similar" variations thereof. *See AirWair Int'l*

15

*Ltd. v. ITX USA LLC*, No. 19-cv-07641-SI, 2021 WL 5302922, at *5 (N.D. Cal. Nov. 15, 2021) (injunction that identifies trademarks may extend to "colorable imitations" of those marks or "confusingly similar" marks) (collecting cases). Second, the proposed injunction is directed to the defendants and extends to their "agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with [d]efendants." Dkt. No. 24-7 at 2. Defendants' specific identities are presently unknown; however, defendants (and the other persons listed in the proposed injunction) nevertheless properly may be bound by the injunction if they receive actual notice of it by personal service or otherwise.[6] *See* Fed. R. Civ. P. 65(d)(2). Finally, the proposed injunction is "tailored to eliminate only the specific harm alleged" with respect to claims 1 and 2. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 839-40 (9th Cir. 2014) (quoting *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012)). Here, sections (a)-(d) of Google's proposed injunction are directed to defendants' wrongful use of Google marks, and the injunction does not extend to other conduct. *See e.g.*, *Gucci Am., Inc. v. Wang Huoqing*, No. C-09-05969-JCS, 2011 WL 31191 at *12-14 (N.D. Cal. 2011) (adopting a permanent injunction with similar language); *Kokhtenko.*, 2021 WL 7448619, at *8. However, the proposed injunction refers to "'Google Marks' *as defined in the Complaint*." Dkt. No. 24-7 at 2 (emphasis added). In particular, the proposed injunction does not describe or illustrate the designs that comprise the G Logo and Google AI Logo marks. This violates Rule 65(d)(1)(C)'s specific requirement that injunctions describe their requirements without reference to the complaint or other documents. *Johnson v. Yip*, No. 21-cv-05910, 2022 WL 1478529, at*1 (N.D. Cal. Apr. 5, 2022) ("Although plaintiff describes in his application the barriers identified in the Complaint, he fails to include within his application or the proposed order submitted therewith the specific language he is requesting be included in an injunction.").

Section (e) of the proposed injunction appears to be directed to Google's breach of contract claim. As noted above, Google's motion includes no discussion of whether injunction relief is

---

[6] Any injunction against defendants and related parties is only effective against those persons or entities "who receive actual notice of this order by personal service or otherwise." Fed. R. Civ. P. 65(d)(2).

warranted as a remedy for breach of the TOS. However, even if such relief were appropriate here, Google's proposed injunction is not narrowly tailored to defendants' breaching conduct. Instead, section (e) is a general proscription against defendants violating any and all Google TOS. *See Google, Inc. v. Jackman*, No. 5:10-cv-04264-EJD (HRL), 2011 WL 3267907, at *6 (N.D. Cal. July 28, 2011) (rejecting proposed injunction that "attempt[s] to prevent Defendants from violating the terms and conditions of all Google programs").

Because sections (a)-(d) of Google's proposed injunction (addressing claims 1 and 2) refer to the complaint and section (e) (addressing claim 3) is overbroad and insufficiently specific, Google's proposed injunction does not fully comply with Rule 65(d).

## V.   CONCLUSION

While it appears that Google has established its entitlement to a default judgment against defendants on the merits, it is not entitled to the specific relief it requests.

Because not all parties have consented to a magistrate judge jurisdiction, the Court directs the Clerk of the Court to reassign this action to a district judge. For the reasons discussed above, the Court recommends that Google's motion for entry of default judgment be granted in part and denied in part as follows:

1.   that default judgment be granted in Google's favor on the merits of claims 1, 2, and 3 of the complaint;

2.   that Google's request for a permanent injunction against defendants' trademark infringement and false designation of origin be denied, without prejudice to Google's submission of an amended proposed injunction that fully complies with the requirements of Rule 65(d)(1)(C).

3.   that Google's request for a permanent injunction against defendants' breach of Google's Terms of Service, as reflected in section (e) of the proposed injunction, be denied.

Google shall promptly serve defendants with a copy of this report and recommendation in the same manner authorized for service of the complaint and summons, consistent with this Court's December 21, 2023, order (Dkt. No. 16), and shall file proof of service within 7 days.

Any party may serve and file objections to this report and recommendation within 14 days after being served.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civil L.R. 72-3.

**IT IS SO ORDERED.**

Dated: July 1, 2024

VIRGINIA K. DEMARCHI
United States Magistrate Judge